UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MARISOL RAMOS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civ. No. 18-14155 (KM)

**OPINION**

### KEVIN MCNULTY, U.S.D.J.:

Plaintiff Marisol Ramos brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act. Ramos seeks to reverse the finding of the Administrative Law Judge ("ALJ") that she has not met the Social Security Act's definition of disabled for a period of March 31, 2014, the alleged injury-onset date, through February 2016.

The issue presented is whether the decision of the ALJ to deny Ramos's application for DIB and SSI is supported by substantial evidence. For the reasons stated below, this Court affirms the ALJ's decision.

### I. BACKGROUND[1]

#### A. Facts

Ms. Ramos was born in Puerto Rico (R. 40) and is 54 years old. (R. 62). She graduated from high school in Puerto Rico. (R. 41). Prior to 2014, Ms.

---

[1] Citations to the record are abbreviated as follows:

    "DE __" = Docket entry in this case;

    "DE 20" = Ramos's brief;

Ramos had various jobs, including home health aide (R. 41) and work at a daycare center (R. 42) and a uniform factory. (R. 42–43).

### 1. Treatment of Foot Pain

Ms. Ramos was diagnosed with diabetes in 2002. (R. 410). On April 8, 2014, Ms. Ramos presented to The University Hospital in Newark, NJ, with pain in her right foot. (R. 363, 369). She was diagnosed with inflammation consistent with cellulitis. (R. 370).

A few days later, on April 11, 2014, Ms. Ramos presented at a clinic for further evaluation of her right heel. (R. 400). Her doctor determined that Ms. Ramos would need surgery to drain an abscess from her foot. (R. 401). On April 14, 2014, Ms. Ramos was admitted to the hospital for treatment. (R. 452). She then underwent two surgical debridement procedures to treat the abscess and MRSA infection. (R. 452). She was discharged on April 22, 2014. (R. 443).

During followup appointments in May and June, Ms. Ramos reported either no pain or minor pain to her right foot. (R. 672, 675, 678). During this time she began placing more weight on her right foot and ultimately returned to wearing regular shoes, using a diabetic heel cup as needed. (R. 672). By June 6, 2014, the incision on her right foot had healed. (R. 671).

On June 24, 2014, the State requested an internal medical examination of Ms. Ramos. (R. 716). Rambhai C. Patel, M.D. conducted an examination of Ms. Ramos on July 8, 2014. (R. 717). Dr. Patel noted that Ms. Ramos experienced pain when walking or standing and that she walked with a nonprescription cane. (R. 717). Dr. Patel's diagnosis included "possibility of neuritis" and "Possibility of diabetic retinopathy and neuritis cannot be rule out." (R. 718 (sic in original)).

---

| "DE 21" | = | The Commissioner's brief; |
| "R. __" | = | Administrative Record (DE 5) (page numbers refer to page numbers found on the bottom right corner of the record rather than the ECF docket page numbers). |

From October 2014 through December 2014, Ms. Ramos had a handful of followup appointments with her doctors. Her September 2014 podiatric examination found decreased sensation in her feet, but no motor deficits. (R. 788). At some of these appointments Ms. Ramos reported pain in her foot. (R. 779, 788–89, 791). In each instance, Ms. Ramos was treated with ibuprofen, Tylenol, ice, and stretching, and was told to wear diabetic shoes. (R. 768, 779, 788–89, 791). In October 2014, Ms. Ramos was offered a steroid shot, but she declined. (R. 780). There are no records that Ms. Ramos sought treatment for this condition after December 2014.

### 2. Treatment for Mental Health

On June 18, 2014, Ms. Ramos was examined by David Bleich, M.D. (R. 665). During this appointment, Ms. Ramos complained of anxiety, stated that she was crying often, and reported hearing voices. (R. 665). Dr. Bleich reported that plaintiff was agitated, was crying, and could not sit still. (R. 666). Dr. Bleich referred Ms. Ramos to the ER, where she had a psychiatric consultation. (R. 650). During the consultation, Ms. Ramos stated that she had anxiety, shaking, suicidal thoughts, and tremors, and said she heard voices. (R. 641–42). She initially appeared anxious but became calmer after having lunch. (R. 643). Dr. Cheryl Kennedy, M.D., noted that Ms. Ramos was a poor historian and had decreased concentration and energy. (R. 641–42). She was prescribed Ativan, which yielded "good results." (R. 642).

A week later, on June 24, 2014, she was evaluated at an outpatient clinic at Rutgers University Behavioral Health Care. (R. 724). Ms. Ramos was described as being a poor historian but did not present with abnormal thoughts or behavior. (R. 729). She further denied any ongoing symptoms of depression, crying, or voices, but stated that she had ongoing anxiety and nervousness. (R. 729). Ms. Ramos was prescribed Zoloft and Ativan and was enrolled in therapy. (R. 724–25). In July 2014, Ms. Ramos presented for a followup appointment. (R. 742). She reported that the medication was helping her sleep, but she had little appetite and reported feeling "tired of life." (R. 742).

On August 27, 2014, Alexander Iofin, M.D., conducted an evaluation of Ms. Ramos at the request of the State. (R. 751). Dr. Iofin observed that she appeared anxious, but did not present as delusional or paranoid. (R. 753). Dr. Iofin further reported that Ms. Ramos did not appear agitated, unmanageable, or disruptive; however, she reported having anger control difficulties and mood swings. (R. 751–53). Dr. Iofin observed that Ms. Ramos's thought process was logical, but that she complained of memory loss. (R. 753). Tested, she repeated two out of three words immediately and zero out of three words five minutes later; was able to repeat four digits forward and two digits backwards; was unable to spell in English; had difficulties subtracting her serial 7s; knew the current President; provided simplistic proverb interpretations; and had reasonable impulse control. (R. 753-54).

In followup appointments in 2014 and 2015, Ms. Ramos did not report continued anxiety or mood concerns. (R. 758, 763, 767, 772).

### B. Procedural History

On April 29, 2014, Ms. Ramos applied for DIB and SSI. (R. 203–216). The application was denied initially and on rehearing. On February 23 and June 5, 2017, the ALJ held hearings. (R. 17).

On August 30, 2017, the ALJ issued a decision (R. 17–29) denying disability benefits on the ground that Ms. Ramos was still able to perform work at step five of the sequential evaluation. (*Id.*).

Ms. Ramos appealed. On August 15, 2018, the Appeals Council concluded that there were no grounds for review and affirmed the decision of the ALJ. (R. 1).

On September 21, 2018, Ms. Ramos filed this action seeking to overturn the ALJ's decision to deny benefits. Initially assigned to Chief Judge Linares, it was reassigned to me upon Judge Linares's retirement. (DE 11).

## II. DISCUSSION

### A. Standard of Review

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to

4

factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder."). This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). A person is deemed unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 1382c(a)(3)(B).

In reaching a decision, an ALJ is only required to addressed relevant examinations, opinion evidence, and the claimant's complaints. *See Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) (An ALJ is only required to "indicate that s/he has considered all the evidence, both for and against the claim, and provide some explanation of why s/he has rejected probative evidence. . . . [T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.").

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000).

### B. The Social Security Act and the Five-Step Process

Under the authority of the Social Security Act, the Administration has established a five-step evaluation process for determining whether a claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If yes, the claimant is not disabled. If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis). If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If yes, the claimant is not disabled. If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

Ramos's appeal hinges on the ALJ's findings as to her RFC, which she says are not supported by substantial evidence. (DE 20 at 18). A claimant's RFC is not a medical diagnosis as such. *See Titles II & XVI: Med. Source Opinions on Issues Reserved to the Comm'r*, SSR 96-5P, 1996 WL 374183 at *2 (S.S.A. July 2, 1996). Instead, it is an administrative finding reserved for the Commissioner. *Id.*; *see also Pintal v. Comm'r of Soc. Sec.*, 602 F. App'x 84, 87 (3d Cir. 2015) ("The ultimate legal determination of disability is reserved for the Commissioner."); *see also Robinson v. Colvin*, 137 F. Supp. 3d 630, 644 (D. Del. 2015) ("[O]pinions that a claimant is 'disabled' or 'unable to work' are not medical opinions and are not given special significance because opinions as to whether or not a claimant is disabled are reserved for the Commissioner."); 20 C.F.R. § 404.1527(d) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

7

An ALJ is not bound by the capacity determinations of a treating physician. *See Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011). Indeed, the determination of disability is legal in nature, and is reserved for the ALJ within the constraints of the statute and regulations. *See Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("[T]he ALJ . . . is not required to seek a separate expert medical opinion."); *Glass v. Colvin*, No. 14-237, 2015 WL 5732175 at *1 (W.D. Pa. Sept. 30, 2015) ("[T]he ALJ is not limited to choosing between competing opinions in the record . . . .").

Medical opinions need be credited by the ALJ only if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). An ALJ may, if appropriate, elect to disregard a medical opinion entirely: "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996); *see also Irey v. Colvin*, No. 13-7423, 2016 WL 337019 at *4 (E.D. Pa. Jan. 27, 2016) ("[T]he ALJ is not bound by the opinion of any one physician[] and can reject an opinion if there is a lack of support or a finding of contradictory evidence in the record.").

### C. The ALJ's Decision

On August 30, 2017, the ALJ issued a decision finding that Ms. Ramos was not disabled within the meaning of the Social Security Act. (R. 29). The ALJ determined that Ramos's impairments were severe, but he also determined that, given Ramos's age, education, work experience, and RFC, she was capable of making a successful adjustment to other jobs that existed in significant numbers in the national economy. (R. 29).

The ALJ followed the five-step process outlined above to determine that Ramos was not disabled. The ALJ's findings are summarized as follows:

**Step One:** At step one, the ALJ determined that Ramos had not engaged in substantial gainful activity for a continuous 12-month period from March 31, 2014 to February 2016. (R. 19–20).

**Step Two:** At step two, the ALJ determined that Ramos had the following severe impairments: peripheral neuropathy of the bilateral lower extremities, right ankle osteoarthritis, depressive disorder, anxiety disorder, and psychotic disorder. (R. 20).

The ALJ also determined that there was objective evidence in the medical records that established that Ms. Ramos had non-severe impairments that established only a slight abnormality that would have a minimal effect on Ms. Ramos's ability to meet the basic demands of work activity: type II diabetes mellitus, status post abscesses of the bilateral feet, excisions and draining, and treatment for MRSA infection. (R. 20).

**Step Three:** At step three, the ALJ determined that Ramos did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. (R. 20-22).

**Step Four:** At step four, the ALJ determined that based on Ms. Ramos's RFC, she could not perform her past relevant work (R. 27), but that she had the RFC to perform light work as defined in 20 C.F.R. 4404.1567(b) and 416.967(b) with additional limitations. (R. 22).

The ALJ found that Ramos's RFC limited her to "standing for 4 hours total and walking for 4 hours total in an 8-hour workday; and she can operate foot controls with right foot occasionally. The claimant can climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; balance occasionally . . . She is limited to performing simple, routine tasks and is limited to simple work-related decisions." (*Id.*). The ALJ determined that notwithstanding Ms. Ramos's testimony regarding her physical limitations, her statements concerning the "intensity, persistence and limiting effects of [her] symptoms" were not consistent with the medical evidence and other evidence in the record, as the medical record established that she received a relatively

9

conservative treatment and she showed significant signs of improvement by December 2014. (R. 23). Regarding her mental impairments, while the ALJ noted her past severe conditions, there was no evidence that Ms. Ramos sought additional treatment after August 2014, suggesting that she had returned to her baseline function. (R. 24).

**Step Five:** At step five, the ALJ considered Ramos's age, education, work experience and RFC in conjunction with the Medical-Vocational Guidelines. (R. 28–29). Relying on the testimony of the vocational expert, the ALJ identified several representative jobs that Ramos could perform: (1) small products assembler; (2) garment folder; and (3) housekeeper/cleaner.

Accordingly, the ALJ determined that Ramos was not disabled, as defined by the Social Security Act, from March 31, 2014, through August 30, 2017. (R. 29).

### D. Analysis of Ms. Ramos's Appeal

#### 1. The ALJ's Assessment of Ms. Ramos's Physical Limitations

Ms. Ramos contends that the ALHJ's RFC assessment of her physical impairments is not based on substantial evidence. She proffers a number of arguments: (1) the ALJ offers no explanation of why 4 hours of walking or standing would be light work (*id.* at 20–21); (2) the ALJ's finding that Ms. Ramos reported significant improvement by December 2014 is not supported by the medical record; and (3) the ALJ improperly accepted the state agency's medical experts' interpretations of the medical record despite there being no explanation for their findings. (*Id.* at 26–27).[2]

---

[2] The state agency medical consultants were as follows: state agency physician Mary Ann Nicastro, M.D., conducted the initial level of administrative review. (R. 77–90). Based on her review of the record, she determined that Ms. Ramos's physical restrictions limited her to a reduced range of light work that involved standing and/or walking about 6 hours in an 8-hour workday; never climbing ramps, stairs, ladders, ropes, or scaffolds; and occasionally performing movements requiring balance, stooping, kneeling, crouching, or crawling. (R. 84-85). Leonard Comess, M.D., reviewed the updated records on reconsideration and agreed with Dr. Nicastro's findings. (R. 98-99).

Regarding (1), Ms. Ramos contends that the ALJ's decision does not explain how Ms. Ramos, given her overall physical condition, could stand for 4 hours a day. (DE 20 at 20). But the ALJ does explain. He reviewed a range of records provided and found that Ms. Ramos's reported pain was inconsistent with the medical records. For example, in November 2014, Ms. Ramos's treating physician, Dr. Warren Chiodo, found that she displayed an intact range of motion to her feet and ankle, intact sensation, and intact reflexes. (R. 776–77). Dr. Chiodo also noted that Ms. Ramos's strength had returned, observing that she had 5/5 strength in all muscle groups tested. In September 2014, Dr. Bleich made similar findings, noting that Ms. Ramos had a normal range of motion and exhibited no signs of tenderness. (R. 785). Together, these assessments are substantial evidence that Ms. Ramos could perform a certain range of light work, including standing for four hours a day.

Concerning (2) — Ms. Ramos's claim that her physical improvements are not borne out by the medical record (DE 20 at 23) — her counsel points to records establishing that she had decreased sensation, tenderness with diabetic neuropathy, plantar fasciitis, and bursitis of the right foot. (*Id.*). She focuses on the December 18, 2014 podiatric examination which reported "pedal pulses [that] were decidedly abnormal along with . . . equinus deformity also noted with decreased dorsiflexion of the foot." She contends that the December 2014 medical notes do not support a finding that Ms. Ramos could "walk and stand 4 hours in an 8 hour workday" (DE 20 at 25). But Ms. Ramos ignores

---

State agency psychologist James Conneran, Ph.D., reviewed the mental health treatment records at the initial level of review and concluded that plaintiff's psychotic disorders were non severe (R. 68) but that Ms. Ramos she was moderately limited with respect to attention, concentration, ability to perform activities that required a schedule, and ability to complete a normal workday and/or workweek without interruptions from psychologically based symptoms. Otherwise, Dr. Conneran observed that Ms. Ramos was not significantly limited when it came to simple work-related decisions, coordination with others, sustaining daily ordinary routines, and ability to carry out simple and detailed instructions. (R. 71–72). Dr. Conneran determined that Ms. Ramos could complete simple, routine work. (R. 72). On reconsideration, Robert Starace, Ph.D., affirmed those findings. (R. 111-16).

that during the same visit she "reports significant symptomatic improvement since last visit. Denies any pain at present. Continues to report post-static dyskinesia in the morning, but states that is ameliorated with ibuprofen . . . Denies any other pedal complaints." (R. 767).

To be sure, there is some evidence to which Ms. Ramos can and does point. Nevertheless, there is substantial evidence to support the ALJ's finding that Ms. Ramos was not disabled as a result of her physical ailments. The ALJ considered the treatment plaintiff received, noting that with conservative treatment her condition improved. (R. 23). The ALJ also noted that during the course of a few months, Ms. Ramos demonstrated significant improvement and function. (R. 23). Moreover, after December 2014, the ALJ noted that there was no record of her having sought or obtained additional treatment for ankle and foot pain. (R. 24).

Concerning (3), I do not accept Ms. Ramos's contention that there was no basis for the ALJ to completely rely on the state's medical experts' findings. These findings, she says, are unsupported by the medical record. (DE 20 at 26–27). Simultaneously, or alternatively, she appears to criticize the ALJ's findings because they diverged from the state's medical consultants' findings. (DE 20 at 26).

As noted above, the opinions of the state's medical experts were well supported by extensive medical records. Moreover, ALJ Ayers did not rely solely on the State's experts in making his determinations. While not required to adopt any prior administrative medical findings, *see* 20 C.F.R. § 404.1513a, the ALJ considered the opinions of the state's medical consultants who determined that Ms. Ramos could stand for about 6 hours a day. Moreover, as was proper, ALJ Ayers "weigh[ed] the medical evidence and [drew] his own inferences." *Brown v. Astrue*, 649 F.3d 193, 196–97 (3d. Cir. 2011) (quoting *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986)). He ultimately took into account the claimant's allegations regarding her physical difficulties with standing, balancing these considerations against the medical record before him to find that Ms. Ramos could stand for 4 hours a day. (R.

26). The ALJ's decision therefore is supported by substantial evidence and does not warrant reversal.

## 2. The ALJ's Assessment of Ms. Ramos's Mental Limitations

Ramos argues that the ALJ at step four did not account for Ms. Ramos's actual mental impairments. (DE 20 at 17–18, 33–34). The mental-impairment based components of the RFC, she says, are unjustified. She argues that the ALJ provides no explanation for the conclusion that she can perform the demands of light work or that she would be able to sustain the attention, concentration, memory or ability to respond to supervisors. (DE 20 at 21–22).

I disagree, finding that the ALJ based his decision on substantial evidence of record. The ALJ notes that Ms. Ramos did seek treatment in June 2014, citing mental health concerns. She denied having sought treatment prior to June 2014, a period during which she was fully employed. (R. 24). The ALJ noted that Ms. Ramos had a positive response to treatment with Ativan; when Ms. Ramos presented for further evaluation at an outpatient behavioral health clinic, she denied having depression symptoms or hallucinations. (R. 24–25). Moreover, the ALJ noted that there is no evidence that Ms. Ramos continued to seek mental health treatment for these issues, suggesting she returned to her baseline function. (R. 24). In subsequent appointments with her primary care provider, Ms. Ramos, although she appeared anxious, had a logical thought process and displayed other normal clinical signs. (R. 25). As the above makes clear, the ALJ addressed several physicians' opinions when developing the RFC. The ALJ discharged his duty to address and discuss the record by analyzing the records from several treating physicians. The ALJ also considered the opinions of the State's medical consultants who further opined that Ms. Ramos was capable of light exertion. (R. 26).

Again, there is evidence to which Ms. Ramos can point, but there is substantial evidence to support the ALJ's conclusion that Ms. Ramos could perform light work with additional limitations. There is no error at step four that would warrant a remand.

13

### 3. The ALJ's Hypothetical Question

Ms. Ramos appears to take issue with the hypothetical posed to the vocational expert at the hearing, although the crux of her complaint is unclear. (DE 20 at 27–32).

The first hypothetical posed to the vocational expert was:

> Assume a hypothetical claimant of the same age, education and work experience. Restricted to the light level, except that standing will be reduced to a total of 4 hours our of 8 hours instead of the usual 6. And walking will be reduced to a total of 4 hours out of 8 hours instead of the usual 6 to 8. The Hypothetical claimant can operate foot controls with the right foot occasionally. The hypothetical claimant can climb ramps and stairs occasionally. Never climb ladders, ropes or scaffolds. Can occasionally balance, occasionally stoop, occasionally kneel, occasionally crouch, occasionally crawl. The hypothetical claimant is limited to performing simple routine tasks. As to the use of judgment and dealing with changes in the work setting is limited to simple work related decisions. Given these limitations would the hypothetical claimant be able to perform the past work?

(R. 50–51). The VE answered no, that Ms. Ramos would not be able to perform past work. (R. 51). But when asked if Ms. Ramos could perform light work, the VE stated that there were occupations at the light level that Ms. Ramos could perform—small products assembler, garment folder, housekeeping cleaner. (R. 51).

It is true of course that a VE's answer to a hypothetical question is only as good as the question itself. The question posed to the VE must reflect all of the claimant's limitations that are supported by substantial evidence, if the VE's opinion is to be valid. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) ("Where there exists in the record undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence."). That does not mean, however, that the VE must be asked to opine on all limitations *alleged* by a claimant. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) ("We do not require an ALJ to submit to the vocational expert every impairment

14

*alleged* by a claimant. Instead ... hypotheticals posed must 'accurately portray' the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments ... that are medically established .... [Thus, t]he ALJ must accurately convey to the vocational expert all of claimant's *credibly established limitations*.").

At the hearing, the ALJ asked the VE to consider a hypothetical individual with Ms. Ramos's age, education, vocational history, and RFC. (R. 50). Since the RFC is supported by substantial evidence, the ALJ accurately portrayed Ms. Ramos's credibly established limitations to the VE. Therefore, the ALJ did not err at step five. The ALJ cited medical records that provided substantial evidence for these findings. (R. 22–27). Therefore, the ALJ had substantial evidence to find that Ms. Ramos's physical and mental limitations were not "severe" impairments.

Ms. Ramos cites *Ramirez v. Barnhart*, cases in which the ALJ's RFC (and hypotheticals based on the RFC) did not address specific mental-health limitations. 372 F.3d 546 (3d Cir. 2004). In *Ramirez*, the ALJ found that the claimant "often" suffers from "deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner (in work settings or elsewhere)." *Id.* at 549. The ALJ included several limitations in the claimant's RFC. She was limited to "sedentary work in a well-ventilated environment, with no exposure to dust, fumes, pets, animals, chemicals, or temperature extremes; occasional breaks necessary for the use of an inhaler or pump; no more than simple one or two-step tasks; no travel outside the workplace; and a reasonable opportunity to receive and make personal telephone calls." *Id.* at 554. The only limitations that related to the *Ramirez* claimant's mental impairments were limitations to simple tasks, the restriction on travel, and phone privileges. These related to claimant's anxiety disorder, which was largely attributable to her "need to feel that she has to be reasonably protective of her children." *Id.* at 555. The RFC in *Ramirez* did not adequately incorporate the claimant's deficiencies in pace, which had been recognized by the ALJ. *Id.*

at 554. This was particularly important because the representative jobs identified for the claimant (assembler, packer, inspector) would entail daily production quotas that would require claimant to maintain a certain pace throughout the day. *Id.* In *Ramirez*, the court found that the accommodations in the RFC would not remedy the claimant's deficiency in concentration and pace, and that was the reason for remand. *Id.* at 555.

In this case, however, ALJ Ayers found that Ms. Ramos has depressive, anxiety, and psychotic disorders that resulted in a moderate limitation with regard to her understanding, remembering, or applying information; interacting with others; or concentrating, persisting, or maintaining pace. (R. 21). Accordingly, the ALJ added appropriate limitations to the RFC regarding her ability to perform only simple tasks and simple work-related decisions. (R. 22–23). Thus this ALJ did not commit the error attributed to the ALJ in *Ramirez*. 372 F.3d at 554. Moreover, this Circuit has regularly found that a RFC limiting claimant to simple, unskilled work is adequate to account for moderate limitations in concentration, persistence, and pace. *See, e.g., Parks v. Comm'r of Soc. Sec.*, 401 F. App'x 651, 655–56 (3d Cir. 2010); *Menkes v. Astrue*, 262 Fed.Appx. 410, 412–13 (3d Cir. 2008); *McDonald v. Astrue*, 293 F. App'x 941, 946–47 (3d Cir. 2008). In short, Ms. Ramos's counsel does not really demonstrate that the hypothetical did not match the RFC; his complaint is that it did. Because the RFC, as found above, was supported by substantial evidence, the hypothetical was likewise valid.

### III. CONCLUSION

Ramos has not shown that the ALJ's decision is unsupported by substantial evidence. Accordingly, the ALJ's decision is **AFFIRMED**.

A separate order will issue.

Dated: December 30, 2019

Hon. Kevin McNulty
United States District Judge